STATE OF CONNECTICUT *v.* GUILLERMO AILLON
(11152)
(11153)
(11154)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and SPONZO, Js.

Argued November 3, 1982—decision released March 1, 1983

*Howard A. Jacobs,* with whom was *Karen Tross,* for the appellant (defendant in each case).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Linda K. Lager,* assistant state's attorney, for the appellee (state).

Peters, J.  This appeal concerns the applicability of principles of waiver and res judicata to a defendant's claim of double jeopardy.  The defendant, Guillermo Aillon, is charged by separate indictments with three murders alleged to have occurred in August of 1972.  His two previous trials on those charges failed to result in a final judgment of either conviction or acquittal.

The defendant by motion in the trial court sought dismissal of the charges against him, claiming that a third trial would subject him to double jeopardy in violation of the fifth amendment to the United States constitution.  The trial court's refusal to permit an evidentiary hearing on this claim and its consequent denial of the defendant's motion to dismiss are the basis for the defendant's present appeal to this court.

In the trial court, the defendant's motion to dismiss was denied because the court concluded that the defendant had waived his right to the defense

of double jeopardy by failing to raise this claim in advance of his second trial. Alternatively, on this appeal, the state urges that the action of the trial court may also be sustained because a previous adjudication of the double jeopardy issue, after the defendant's second trial, precludes reconsideration of that claim now.

Because it is evident that the lengthy history of *State* v. *Aillon* forms the core of the arguments advanced by both the defendant and the state, a review of that history is necessary. In 1973, after the defendant's first trial, a jury found him guilty of the three counts of murder with which he is presently charged. Thereafter, upon discovering that the trial judge had engaged in an ex parte conversation with a juror during the course of deliberations, the defendant successfully petitioned for a new trial.[1]

On the state's appeal, this court set aside the order for a new trial. *Aillon* v. *State,* 168 Conn.

---

[1] In granting the petition after an evidentiary hearing the court, *J. Shea, J.,* found that at 10 p.m. on the jury's final night of deliberations, one of the jurors had asked to speak to the trial court judge " 'with regard to a personal matter.' " *Aillon* v. *State,* 168 Conn. 541, 544, 363 A.2d 49 (1975). "A short time later, the trial judge, accompanied by the sheriff, appeared at the doorway of the jury room, and juror Read started to relate her problem to the judge. The judge, however, requested that she step out and he escorted her to the back of the jury box. The ensuing conversation lasted only a few minutes. Juror Read, who appeared nervous and upset, explained that she wanted to go home to Massachusetts but that some of the jurors wanted to adjourn for the evening although she and others wanted to continue deliberating. She then asked the judge, 'Can we stay?' The judge responded, 'Yes, you can stay.'

"The other jurors could not hear the conversation, although one juror testified that he thought he heard the trial judge say, 'You have to stay.' What juror Read said on her return to the jury room is disputed, but some jurors felt that she said the judge had told them to remain; others felt that the judge merely indicated that

541, 363 A.2d 49 (1975).[2] We agreed with the lower court, *J. Shea, J.*, that the ex parte conversation had intruded upon the defendant's constitutional right to be present at every stage of the trial; id., 546; and to be assisted by counsel; id.; and we also agreed that it was therefore the state's burden to demonstrate that the constitutional error was harmless beyond a reasonable doubt. Id., 548. We found error, however, in the lower court's exclusion from the evidence of juror testimony as to conditions which might have mitigated the prejudicial effect of the impropriety. Id., 553–54. We therefore remanded for further proceedings.

A second hearing on the defendant's petition for a new trial ensued, but this time the lower court, *O'Sullivan, J.*, denied it. Upon a new appeal by the defendant, we set the judgment aside and directed that the petition for new trial be granted. *Aillon* v. *State,* 173 Conn. 334, 340, 377 A.2d 1087 (1977). Since the record contained no credible evidence as to the contents of the ex parte conversation; id., 339; we concluded that the lower court was in error in determining that the conversation was harmless beyond a reasonable doubt. Id., 340.

they could stay. At any rate, when the foreman asked what the trial judge had said, juror Read responded, in the presence and hearing of the other jurors, 'We can stay or we can go home but if we go home we come back tomorrow, the next day and the next day.' The jury thereupon continued deliberating. Six hours later, at 4:25 a.m. on Saturday, September 1, 1973, the jury reached their verdict of guilty on each of the three counts of murder.

"Although the plaintiff and his counsel were present in the courthouse at all times on the evening in question, the trial judge did not inform them of either the note or the ensuing conversation with juror Read." Id., 544–45.

[2] This was the second time that this court had reviewed the case. Our first encounter was a decade ago, before the first trial, when we ordered a new hearing on the defendant's motion for pretrial bail. *State* v. *Aillon,* 164 Conn. 661, 662–63, 295 A.2d 666 (1972).

The defendant's second trial commenced on October 26, 1978. At no time prior to that date did he raise a claim that his retrial was barred by the prohibition against double jeopardy. The second trial ended with a declaration of mistrial after the jury failed to return a verdict. Thereafter the defendant moved for a judgment of acquittal. The motion for acquittal raised three claims: double jeopardy, insufficiency of the evidence, and acquittal required in the exercise of sound judicial discretion. The defendant's double jeopardy claim was based on the legal theory that, the first trial having ended in the functional equivalent of a mistrial, and the second trial having ended in a mistrial per se, further prosecution should be prohibited. In characterizing the first trial as the functional equivalent of a mistrial, the defendant alleged that the guilty verdict in his first trial "resulted from the judge requiring the jury to deliberate for an unreasonable length of time."[3] The trial court, *Quinn, J.,* considered the defendant's claims on the merits and denied the motion for acquittal.

---

[3] The motion for judgment of acquittal contained, inter alia, the following allegations:

"4. The first trial started on May 18, 1973 and ended in the early morning hours of September 1, 1973.

"5. During the jury deliberations in connection with the first trial, the jury reported that it was 'unable to come to a unanimous decision.' The Judge gave the 'Chip Smith' charge and allowed the jury to deliberate until 4:37 A.M. This amounted to a period of about eighteen and one-half hours of continuous deliberations after which a guilty verdict was returned.

"6. The judge . . . was aware of the fact that following the 'Chip Smith' charge, some of the jurors who had been deliberating between eleven and twelve hours at that time, were tired and wanted to go home for the night. *Aillon* v. *State,* 168 Conn. 541, 544 [363 A.2d 49] (1975), *Aillon* v. *State,* 173 Conn. 334, 336 [377 A.2d 1087] (1977). He never informed counsel for the defendant of that fact, and the jury verdict as a result of the first trial resulted from the judge requiring the jury to deliberate for an unreasonable length

The defendant appealed.[4] In his brief, he persisted in characterizing the first trial as the functional equivalent of a mistrial and, in support of that theory, referred to the trial judge's improper conversation with the juror, and to "the first trial judge's improper coercion of the jury to break its declared deadlock."

In holding that a third trial was not barred by double jeopardy, we accepted, arguendo, the defendant's characterization of the first trial as a mistrial. *State* v. *Aillon*, 182 Conn. 124, 135, 438 A.2d 30 (1980). Notwithstanding such a view, we were not persuaded that the fact of two mistrials posed a bar to reprosecution where, as in the present case, "the defendant has exercised his right to control the course of the proceedings." Id., 137–38.

More than a year after our rejection of the defendant's first double jeopardy claim, the defendant made the motion to dismiss which is the subject of this appeal. In that motion, the defendant renewed his argument that a third trial was barred by double jeopardy. Again the claim was based on the ex parte conversation in the first trial. The defendant argued that judicial overreaching in that

---

of time. The decision of Hon. John Shea in connection with the defendant's new trial petition referred to the 'obvious weariness and strain some of the jurors must have felt.' *Aillon* v. *State*, 168 Conn. 541, at 545 [363 A.2d 49 (1975)]. The deliberations in the first trial covered a span of forty-eight hours.

&ast; &ast; &ast;

"9. Furthermore, there were two complete trials on defendant's new trial petition in this matter. As a result of the first hearing, Hon. John Shea granted the defendant's petition for a new trial. The State appealed to the Supreme Court and a new trial of that petition was ordered."

[4] The only issue considered on appeal was the claim of double jeopardy. The other claims were dismissed as being from other than a final judgment. *State* v. *Aillon*, 182 Conn. 124, 126, 438 A.2d 30 (1980).

trial had foreclosed the defendant's right to have his guilt or innocence determined by the particular tribunal summoned to sit in judgment on him. To establish the factual basis for the claim of judicial overreaching, the defendant asserted that the two previous factual findings concerning the ex parte conversation were res judicata with respect to the motion to dismiss. In addition, he moved for a third evidentiary hearing[5] to establish the bad faith on the part of the first trial judge which allegedly motivated the ex parte conversation.

In denying the motion, the trial court relied on *State* v. *Jones,* 166 Conn. 620, 630, 353 A.2d 764 (1974), for the proposition that the proper time for bringing the double jeopardy motion, based entirely on events which transpired during the first trial, was before the commencement of the second trial, and that, in failing to move in a timely manner, the defendant had waived the defense. The trial court noted that the motion's factual basis was known to the defendant before the second trial, and that the motion's legal basis had previously been articulated in the courts.

The defendant has raised three issues on appeal. First, relying on language in *State* v. *Darwin,* 161 Conn. 413, 419, 288 A.2d 422 (1971), that a new trial "is 'new' in every sense"; id.; he argues that the declaration of a mistrial at the end of the second trial rendered that second trial a nullity in

---

[5] The defendant intended to offer the testimony of two witnesses. The first was a newspaper reporter who, the defendant alleged, would testify as to repeated statements by the first trial judge demonstrating his prejudice, bias and contempt for the defendant. The second was the clerk of the first trial court who, the defendant alleged, would testify as to the first trial judge's failure to include in the record the note from the jury which initiated the ex parte conversation. See footnote 1, supra.

every respect. Thus, argues the defendant, he should be entitled to raise the present claim regardless of his failure to do so before the second trial. Second, he claims that the alleged waiver was not voluntary, knowing and intelligent and therefore was constitutionally invalid.[6] Third, he challenges the trial court's conclusion that the legal theory underlying his motion to dismiss was articulated before the second trial commenced.

We do not reach the merits of the defendant's claim that he has not waived his claim of double jeopardy. Even if we were to resolve the waiver issue in the defendant's favor, and thereby hold that he remained entitled to raise the issue of judicial overreaching after his second trial, we would nonetheless be obliged to hold that the rejection of his previous claim of double jeopardy, affirmed by us in *State* v. *Aillon*, 182 Conn. 124, 438 A.2d 30 (1980), is res judicata with respect to the claim he now wishes to advance. We therefore affirm the order of the trial court denying the defendant's motion for dismissal of the charges against him and for an evidentiary hearing.

Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac*, 94 U.S. 351,

---

[6] Although we do not reach the merits of the defendant's second claim, we point out that this court has never held that a waiver of the defense of double jeopardy, to be constitutionally valid, must be knowing, voluntary and intelligent. See *State* v. *Aillon*, 182 Conn. 124, 130–31 n.5, 438 A.2d 30 (1980).

352–53, 24 L. Ed. 195 (1876); 1 Restatement (Second), Judgments §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.) § 11.3.[7]

In principle, res judicata applies to criminal as well as civil proceedings. *Sealfon* v. *United States,* 332 U.S. 575, 578, 68 S. Ct. 237, 92 L. Ed. 180 (1948); *Steele* v. *United States No. 2,* 267 U.S. 505, 507, 45 S. Ct. 417, 69 L. Ed. 761 (1924); *United States* v. *Oppenheimer,* 242 U.S. 85, 87, 37 S. Ct. 68, 61 L. Ed. 161 (1916); *State* v. *Camera,* 132 Conn. 247, 249, 43 A.2d 664 (1945); see also *Ashe* v. *Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Wilson,* 180 Conn. 481, 486, 429 A.2d 931 (1980) (applying the related doctrine of collateral estoppel[8] to criminal cases). Res judicata may operate to preclude relitigation by a criminal defendant as well as by the state. *Steele* v. *United States No. 2,* supra; see also *United States* v. *Colacurcio,* 514 F.2d 1, 6 (9th Cir. 1975); *State* v. *Wilson,* supra; *People* v. *Scott,* 93 Misc. 2d 1074, 1082–83, 405 N.Y.S.2d 169 (1978) (applying the doctrine of collateral estoppel to preclude a defendant from relitigating in a second prosecution an issue determined adversely to him in a prior prosecution). Nonetheless, in applying the doctrine

[7] While the cited scholarly sources restrict their scope to civil matters, the principles they articulate are applicable to criminal proceedings as well. 1 Restatement (Second), Judgments (1982) p. 2. See *Gaitan* v. *United States,* 295 F.2d 277, 279–80 (10th Cir. 1961), cert. denied, 369 U.S. 857, 82 S. Ct. 939, 8 L. Ed. 2d 15 (1962).

[8] Collateral estoppel, or issue preclusion, is the doctrine that bars relitigation, in a second action between the same parties brought upon a different claim, of issues already determined in the first action. *Cromwell* v. *County of Sac,* 94 U.S. 351, 353, 24 L. Ed. 195 (1876); 1 Restatement (Second), Judgments § 27 (1982); James & Hazard, Civil Procedure (2d Ed.) § 11.3. The doctrine of collateral estoppel, unlike that of res judicata, operates to bar only matters actually litigated in the prior action. 1 Restatement (Second), Judgments, supra; James & Hazard, supra, § 11.17.

of res judicata to a defendant's constitutional claim, special policy considerations must be taken into account. The interest in achieving finality in criminal proceedings must be balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights. *Sanders* v. *United States,* 373 U.S. 1, 8, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963); *Clark* v. *Nickeson,* 321 F. Sup. 415, 420 (D. Conn. 1971). Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered "in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon* v. *United States,* supra, 579; *United States* v. *Kramer,* 289 F.2d 909, 915 (2d Cir. 1961); cf. Vestal, "Issue Preclusion and Criminal Prosecutions," 65 Iowa L. Rev. 281 (1980).

In the present case, the predicate for application of the doctrine of res judicata is established by the valid final judgment denying, on the merits, the defendant's previous claim of double jeopardy. *State* v. *Aillon,* 182 Conn. 124, 126, 138, 438 A.2d 30 (1980). A judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest. 1 Restatement (Second), Judgments § 13, comment e. We note that, for the purposes of appeal, a denial of a claim of double jeopardy is a final judgment. *State* v. *Seravalli,* 189 Conn. 201, 206n, 455 A.2d 852 (1983); *State* v. *Moeller,* 178 Conn. 67, 69, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979). Although the standards for finality regarding appellate review and res judicata are not necessarily congruent; 1 Restatement (Second), Judgments § 13, comment b; there was nothing tentative or conditional about the denial of the

defendant's first double jeopardy claim, and the claim was given careful consideration by the lower court, whose judgment was then affirmed on appeal. See *United States* v. *Ajimura,* 598 F.2d 510, 513 (9th Cir. 1979) (precluding, via res judicata, a second pretrial claim of double jeopardy).

What remains to be determined is whether the present claim of double jeopardy is sufficiently similar to the previous claim to warrant our giving preclusive effect to the prior judgment. Bearing in mind the special consideration to which a defendant's constitutional claims are entitled, we conclude nonetheless, on the present record, that the defendant may not relitigate the question of double jeopardy.

The defendant's previous double jeopardy claim had as a factual basis the first trial judge's improper contact with a juror. From that basis, the defendant argued unsuccessfully that the first trial was the functional equivalent of a mistrial, and that two successive mistrials barred reprosecution. The present claim relies on precisely the same facts, sought to be supplemented with evidence purporting to show the judge's bad faith, to advance a legal argument only slightly different; i.e., that the judge's misconduct foreclosed the defendant's right to be judged by the first tribunal convened to judge him. This slight shift in evidentiary basis and substantive theory of law does not constitute a new claim. 1 Restatement (Second), Judgments § 25, comments b, d;[9] accord *Steele* v.

[9] 1 Restatement (Second), Judgments § 25, comment b, provides in part: "A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment."

1 Restatement (Second), Judgments § 25, comment d, provides: "d. *Successive actions changing the theory or ground.* Having

*United States No. 2,* 267 U.S. 505, 507, 45 S. Ct. 417, 69 L. Ed. 761 (1924).[10] That identical grounds for relief may be supported by different factual allegations or different legal arguments or couched in different language renders those grounds no less identical. *Sanders* v. *United States,* 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963).[11]

No valid reason has been alleged as to why the defendant could not have brought the present claim when the prior one was brought. Even if we confine ourselves to cases of the United States Supreme

been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred."

[10] In *Steele* v. *United States No. 1,* 267 U.S. 498, 499, 45 S. Ct. 414, 69 L. Ed. 757 (1924), the defendant had unsuccessfully challenged the legality of a search, arguing that the accompanying warrant was not issued upon probable cause, that it did not particularly describe the place to be searched or the property to be seized, and that the search conducted under the warrant was unreasonable. Id. A second claim, challenging the competency of the evidence of probable cause, was barred by res judicata. *Steele* v. *United States No. 2,* 267 U.S. 505, 507, 45 S. Ct. 417, 69 L. Ed. 761 (1924).

[11] *Sanders,* although it does not involve the doctrine of res judicata per se, analyzes the federal statutory provisions; 28 U.S.C. §§ 2244, 2255; which permit courts to refuse to hear repetitive applications for post-conviction relief. Controlling weight may be given to a denial of a prior application only if, inter alia, the ground presented by the subsequent application was determined adversely to the applicant in the prior application. *Sanders* v. *United States,* 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963). Thus, where it had been previously determined on direct appeal that the jury which convicted the defendants had not been improperly influenced by news accounts, the related fact that the trial judge had questioned the jurors in camera, to assay the effect of the publicity, could not be the basis for an application for postconviction relief. *Polizzi* v. *United States,* 550 F.2d 1133, 1136 (9th Cir. 1976); see 4 Wharton, Criminal Procedure (12th Ed. 1976) § 649; 3 Wright, Federal Practice & Procedure (1982) § 602.

Court, we agree with the trial court that the principle that judicial overreaching may bar reprosecution had repeatedly been enunciated before the defendant made his motion for acquittal in 1979. E.g., *Lee* v. *United States,* 432 U.S. 23, 33–34, 97 S. Ct. 2141, 53 L. Ed. 2d 80 (1977); *United States* v. *Dinitz,* 424 U.S. 600, 611, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976); *United States* v. *Jorn,* 400 U.S. 470, 485 n.12, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971); *United States* v. *Tateo,* 377 U.S. 463, 468 n.3, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964); *Downum* v. *United States,* 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963); *Gori* v. *United States,* 367 U.S. 364, 369, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961). The defendant conceded at oral argument that there was no procedural bar to the conjunction of the present motion to dismiss with the 1979 motion for acquittal.[12] Two evidentiary hearings have already

[12] During oral argument on November 3, 1982, the following colloquy occurred:

"The Court: And this argument might have been made when the prior double jeopardy issue was raised in this court?

"Counsel for Defendant: No.

"The Court: It *might* have been made?

"Counsel: It might *not* have been made. There was no evidentiary basis for it.

"The Court: Okay. But at the time when the double jeopardy issue was first raised at the end of the second trial, there was then as much of an opportunity as there is now to raise this issue.

"Counsel for Defendant: No, because when that was raised at the end of the second trial it was in connection with a motion for judgment of acquittal. That has to do only with the sufficiency of the evidence. In order to raise the double jeopardy issue that we now seek to raise, we are required to put on evidence to show exactly what was in the mind of [the first trial judge].

"The Court: I'm not making myself clear. This issue might have been raised to the extent that you wanted to raise it with an evidentiary hearing. It might, however, have been in conjunction with the hearing at that time.

"Counsel for Defendant: Well, it would not have been in connection with the motion for judgment of acquittal. Could we, after

investigated the incident in question. The trial judge's misconduct has been the basis for a successful motion to set aside the first verdict; it has been the basis for an unsuccessful claim of double jeopardy; it cannot now be the basis for yet a renewed claim of double jeopardy.

There is no error.

In this opinion the other judges concurred.

the mistrial, the second time, have filed a motion to dismiss, before Judge Quinn, on double jeopardy grounds? I suppose we could have done it before anybody, and we've done it. That's what it's all about. We have done that. I don't think we're required to do it at the conclusion of the mistrial. I think we're only required to do it prior to the start of the third trial.

"The Court: Well, do you feel that if we were to decide this issue against you, you could then go back in the trial court and file another motion on double jeopardy, on some double jeopardy ground that you presently perhaps haven't thought of, and then come back up here again another year from now?

"Counsel for Defendant: Well, I think that I've thought of the only remaining double jeopardy issue here. But, to answer your question: I think, yes."