STATE OF CONNECTICUT *v.* WILMER PARADISE, JR.
(13279)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued November 8, 1989—decision released January 2, 1990

*Martin Zeldis,* assistant public defender, with whom were *Carmine Giuliano* and, on the brief, *G. Douglas Nash,* public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John Malone,* assistant state's attorney, for the appellee (state).

GLASS, J. This case marks the third time that the state's proceedings against Wilmer Paradise, in relation to the 1974 murder of Jay Cunningham, have resulted in an appeal before this court. As this court noted in the second appeal, *State* v. *Ellis,* 197 Conn. 436, 438–39, 497 A.2d 974 (1985), in May, 1974, the body of seventeen year old Jay Cunningham was found in a wooded area of Enfield. The chief medical examiner classified Cunningham's death as a homicide resulting from multiple stab wounds. More than seven years later, in December, 1981, Wilmer Paradise and Brian Ellis were arrested and charged with the crimes of murder, General Statutes § 53a-54a, felony murder, General Statutes § 53a-54c, and kidnapping, General Statutes § 53a-92 (a) (2), in connection with Cunningham's death. One month after their arrest, the defendants moved to dismiss the charges, claiming that their prosecution was barred by General Statutes (Rev. to 1975) § 54-193,[1] which imposed a five year limitation

---

[1] "[General Statutes (Rev. to 1975)] Sec. 54-193. LIMITATION OF PROSECUTIONS FOR VARIOUS OFFENSES. No person shall be prosecuted for treason against this state, or for any crime or misdemeanor of which the punishment is or may be imprisonment in the Connecticut Correctional Institution, Somers, except within five years next after the offense has been committed; nor shall any person be prosecuted for the violation of any penal law, or for other crime or misdemeanor, except crimes punishable by death

on the prosecution of any crime for which "the punishment is or may be imprisonment in the Connecticut Correctional Institution, Somers." On March 29, 1982, the trial court granted the defendants' motions and the state appealed. This court found no error. *State* v. *Paradise,* 189 Conn. 346, 456 A.2d 305 (1983) (*Paradise I*).

After the decision in *Paradise I,* the state, on April 11, 1983, rearrested Paradise and Ellis on charges of capital felony, General Statutes § 53a-54b (5).[2] Paradise and Ellis filed motions to dismiss, claiming, inter alia, that their prosecution was barred under the principles of res judicata. The trial court agreed and dismissed the indictments. The state appealed, and on September 10, 1985, this court held that the trial court had improperly applied the doctrine of res judicata and set aside the judgments of dismissal. *State* v. *Ellis,* supra, 478.

On October 25, 1985, Paradise waived a preliminary hearing to determine probable cause in return for the state's agreement not to seek the death penalty. He entered a plea of not guilty and demanded a trial by jury. On June 8, 1987, the state filed a substitute information, again charging him with the crime of capital felony in violation of General Statutes § 53a-54b (5). The trial began on that date before a jury of twelve,

or imprisonment in the Connecticut Correctional Institution, Somers, but within one year next after the offense has been committed; but, if the person, against whom an indictment, information or complaint for any of said offenses is brought, has fled from and resided out of this state, during the period so limited, it may be brought against him at any time, within such period, during which he resides in this state, after the commission of the offense; and, when any suit, indictment, information or complaint for any crime may be brought within any other time than is limited by this section, it shall be brought within such time."

[2] General Statutes § 53a-54b provides in pertinent part: "A person is guilty of a capital felony who is convicted of any of the following . . . (5) murder by a kidnapper of a kidnapped person during the course of the kidnapping or before such person is able to return or be returned to safety."

presided over by the Honorable Thomas H. Corrigan. On July 2, 1987, the jury found Paradise guilty as charged, and on September 3, 1987, he received a sentence of twenty-five years to life.

Paradise has now appealed to this court, arguing: (1) the dismissal of the charges initially brought against him on the grounds that they were barred by the statute of limitations renders his subsequent prosecution on a more severe charge for the same conduct violative of the due process clauses of the United States and Connecticut constitutions;[3] (2) a new trial is required as a result of the state's misrepresentations concerning its sentencing recommendation for an accomplice witness, Brian Ellis; (3) the trial court erred in prohibiting him from inquiring into charges of misconduct leveled against a physician who testified as to the cause of the victim's death; and (4) the trial court erred in failing to ascertain on the record whether he had made a knowing, voluntary and intelligent waiver of his right to testify on his own behalf. We find no error.

From the evidence revealed at trial the jury could reasonably have found the following facts. On the evening of May 14, 1974, the defendant, Ellis, and David Worthington were driving around in a van when the defendant suggested that they go looking for Jay Cunningham because Cunningham owed him between $6000 and $7000 as a result of a drug deal. The trio found Cunningham standing outside the Scitico Shopping Center in Enfield. The defendant told Ellis and Worthington that if Cunningham did not have his money that "we're going to rough him up." Ellis, who was driving, stopped the van, and the defendant and Worthington got out. The defendant asked Cunningham if he had the money. When Cunningham said "no," the defendant and Worthington grabbed him by his left arm and pushed him into the van.

---

[3] U.S. Const., amend. XIV, § 1; Conn. Const., art. I, § 8.

At the defendant's direction, Ellis pulled the van onto a dirt road in Enfield, and came to a stop by a gravel bank. The defendant, Worthington and Cunningham got out of the van. Ellis stayed behind the wheel and watched as Worthington punched Cunningham in the face. Cunningham fell down and Worthington kicked him three times in his midsection. As Cunningham was struggling to get back to his feet, the defendant pulled a knife and stabbed him. Cunningham screamed and fell back down and the defendant stabbed him again. Ellis then exited the van and approached Cunningham. Both Ellis and Worthington wanted to leave quickly. The defendant, however, told them that if either left he would tell the police that that person had killed Cunningham. The defendant then gave the knife to Worthington and insisted that he stab Cunningham. Worthington complied. The defendant then handed the knife to Ellis and made a similar demand, and Ellis stabbed Cunningham in the right side. Cunningham's body was found on May 31, 1974, by a tobacco worker.

I

The defendant claims that the state's bringing the charge of capital felony against him, after the initial charges of murder, felony murder and kidnapping were dismissed on statute of limitations grounds, violated his due process rights under the United States and Connecticut constitutions. In particular, the defendant asserts that the state's bringing of the subsequent charge of capital felony constituted prosecutorial vindictiveness. We hold, however, that the defendant is precluded by the principles of res judicata, as enunciated in State v. Aillon, 189 Conn. 416, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983), from bringing a prosecutorial vindictiveness claim in this appeal.

The defendant in *Aillon* was charged with three murders. His first two trials on those charges had failed to result in the final judgment of either conviction or acquittal. Aillon claimed, for the second time, that a third trial would subject him to double jeopardy, in violation of the fifth amendment to the United States constitution. This court held, however, that the rejection, in *State* v. *Aillon,* 182 Conn. 124, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981), of his first claim of double jeopardy, after the second trial, was res judicata with respect to his second double jeopardy claim. *State* v. *Aillon,* supra, 189 Conn. 416, 420–23. The court noted: "Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac,* 94 U.S. 351, 352–53, 24 L. Ed. 195 (1876); 1 Restatement (Second), Judgments §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.) § 11.3. . . . Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered 'in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *State* v. *Aillon,* supra, 189 Conn. 416, 423–25.

Therefore, the principal question that the court in *State* v. *Aillon,* supra, 189 Conn. 416, had to resolve was whether the defendant's latter claim of double jeopardy was sufficiently similar to his earlier double jeopardy claim to warrant the court's giving preclusive effect to the prior judgment. The court noted (pp. 426–27): "The defendant's previous double jeopardy claim had as a factual basis the first trial judge's improper contact with a juror. From that basis, the

defendant argued unsuccessfully that the first trial was the functional equivalent of a mistrial, and that two successive mistrials barred reprosecution. The present claim relies on precisely the same facts, sought to be supplemented with evidence purporting to show the judge's bad faith, to advance a legal argument only slightly different; i.e., that the judge's misconduct foreclosed the defendant's right to be judged by the first tribunal convened to judge him. This slight shift in evidentiary basis and substantive theory of law does not constitute a new claim. 1 Restatement (Second), Judgments § 25, comments b, d; accord *Steele* v. *United States No. 2*, 267 U.S. 505, 507, 45 S. Ct. 417, 69 L. Ed. 761 (1924). That identical grounds for relief may be supported by different factual allegations or different legal arguments or couched in different language renders those grounds no less identical. *Sanders* v. *United States*, 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)."[4]

The court's analysis in *Aillon* is directly on point in the instant case with respect to Paradise's claim of prosecutorial vindictiveness. In Paradise's second appeal, *State* v. *Ellis*, supra, he raised the issue of whether the principles of res judicata barred the state's charging him with capital felony, after its initial charges of murder, felony murder and kidnapping were dismissed on statute of limitations grounds. This court held that the dismissal of the initial charges did not bar the state's subsequent prosecution of Paradise on a charge of capital felony. Thus, the principal question in this case is whether Paradise's present claim of prosecutorial vindictiveness is sufficiently similar to his

---

[4] In addition, the *Aillon* court noted that the defendant had not asserted a valid reason as to why he could not have brought his latter double jeopardy claim when he had brought his prior one. *State* v. *Aillon*, 189 Conn. 416, 427, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983).

earlier claim of res judicata to warrant this court's giving preclusive effect to the judgment in *Ellis.* We conclude that it is. Just as the defendant in *Aillon* raised two double jeopardy claims emanating from precisely the same facts, Paradise raises two due process claims stemming from precisely the same facts.

Although the doctrine of res judicata itself is not of constitutional dimensions; see, e.g., *United States* v. *Oppenheimer,* 242 U.S. 85, 87–88, 37 S. Ct. 68, 61 L. Ed. 161 (1916); *Ellis* is a due process case. As this court noted in *Ellis:* "Where the double jeopardy clause is inapplicable, due process protects against vindictive or coercive use of the power to prosecute. See *United States* v. *Goodwin,* 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982); *Blackledge* v. *Perry,* 417 U.S. 21, 28–29, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)." *State* v. *Ellis,* supra, 478. In simple terms, the issue in *Ellis* was whether the state could bring a subsequent prosecution that was based on the same evidence and conduct as the previous prosecution.[5] Thus, the underpinning of *Ellis* is clearly one of due process.[6]

Both the claim asserted by Paradise in *Ellis* and the claim asserted by him in the present case therefore, are ones of due process. Since both claims arise from the same factual and evidentiary foundation, the state's decision to bring a subsequent charge of capital felony against Paradise, we hold that Paradise's first due pro-

---

[5] In *State* v. *Ellis,* 197 Conn. 436, 483, 497 A.2d 974 (1985), Chief Justice Peters noted in dissent that the majority's rejection of Paradise's res judicata claim, in effect, "impose[d] upon [him] the punishment of increased jeopardy for having exercised [his] right to contest the validity of the original proceedings against [him]. Such a result is unconstitutional. *Due process* forbids punishing criminal defendants for the exercise of constitutional or statutory rights." (Emphasis added.)

[6] In fact, defense counsel admitted to such at oral argument, stating: "There was a due process claim pursued in *State* v. *Ellis* [197 Conn. 436, 497 A.2d 974 (1985)]."

cess claim in *Ellis* is res judicata with respect to his due process claim of prosecutorial vindictiveness in the present case.[7]

## II

Next, the defendant claims that a new trial is required as a result of the state's repeated misrepresentations concerning its sentencing recommendation for its key witness, Brian Ellis. We disagree. The defendant contends that the state's attorney did not accurately portray the nature of the bargain that his accomplice, Ellis, struck with the state. Paradise maintains that the prosecutor led the jury and the court to believe that Ellis' testimony would have no bearing on his sentence and then, at the time of Ellis' sentencing, requested the sentencing court to consider Ellis' testimony in imposing his sentence.

In particular, on April 10, 1986, in relation to the charge of capital felony that was pending against him for his involvement in Cunningham's murder, Ellis entered a plea of nolo contendere to the crime of kidnapping in the second degree, in violation of General Statutes § 53a-94. At that time, the state represented that "we intend to recommend at the time of sentencing a sentence to serve not less than seven years, nor more than fourteen years. Counsel has reserved his right to argue for the imposition of a lesser sentence." During Paradise's trial, the prosecutor then had the following colloquy with Ellis:

[7] In addition, Paradise has not asserted a valid reason as to why he could not have brought his present due process claim in his appeal in *State* v. *Ellis,* 197 Conn. 436, 497 A.2d 974 (1985), especially since Paradise did bring a cross appeal in *Ellis* on another issue.

Furthermore, although the issue of prosecutorial vindictiveness was not the principal issue before the court in *Ellis,* the court noted: "The defendants do not contend, nor do we find, that the state reinitiated prosecution in this case for other than constitutionally legitimate reasons." Id., 477–78.

"Q. Do you have an understanding as to whether or not the State will make any recommendation with respect to your sentence?

"A. I hope so.

"Q. And what is your understanding, Sir?

"A. That if I testify, I can get a lower sentence.

"Q. And what is the recommended sentence? What will the State recommend for you?

"A. Hopefully something lower than the sentence that I'm getting.

"Q. Which sentence are you going to get, Sir?

"A. Seven to 14 years.

"Q. The sentence of not less than seven or more than 14 years?

"A. Yes.

"Q. To serve?

"A. Yes.

"Q. And do you understand whether or not your attorney has the right to argue for a lesser sentence? Mr. Klein, here?

"A. Yes.

"Q. And can you tell us why you're testifying here today?

"A. So that I hope that I do get a lesser sentence.

"Q. Now do you understand that the State is going to recommend a sentence of seven to 14 years?

"A. Yes.

"Q. And your attorney has the right to argue for a lesser sentence, is that right?

"A. Yes.

"Q. And do you understand that the State's recommendation is seven to 14 years, regardless of whether you testify today? You understand that, Sir?

"A. Yes, Your Honor; I mean, yes.

"Q. And that you're testifying today, are you, so that your attorney .may argue for a lesser sentence?

"A. Yes."

Then, the same prosecutor who conducted this line of questioning with Ellis, stated the following at Ellis' sentencing hearing:

"[State's Attorney]: . . . [W]e ask the Court to—ah—I do feel that some mitigation of the seven to fourteen (7 to 14) would certainly be appropriate; and I think it's only appropriate, however, in cases where people come forward and actually testify. And, not so when people 'stonewall' and don't testify. . . .

"The Court: I would gather from that, if Mr. Ellis were here today pleading for the first time—after the testimony—that you would probably—your recommenation would have been lower than it was originally—knowing all the facts now. I recognize, in different words.

"[State's Attorney]: It's a difficult question to answer. I really can't answer it. All I can do is to urge the Court to give him some concrete consideration with respect to the—as against the cap which the State . . . .

"The Court: All right. I assume that you're urging that because you feel that's appropriate?

"[State's Attorney]: I do it for two (2) reasons. First, I have a duty to; and second, I feel it's appropriate also. . . . [E]verything he has done since the date of

the plea of no contest has been of assistance to the State; and I feel very strongly, that he should get the Court's consideration for what he's done because it has been difficult for him and helpful to the State." The court then stated: "Essentially, I'm going to give you [Ellis] the recommendation of the State—but it's not less than seven (7) or more than fourteen (14). . . . I'm going to impose a sentence of not less than four and a half (4 1/2) years and no more than nine (9) years."

The defendant claims that the state's effectively altering its sentencing recommendation for Ellis, after steadfastly representing at trial that it would not do so, constitutes constitutional error. The defendant maintains that two possibilities exist regarding the state's actions, both of which result in the defendant being deprived of his constitutional right to a fair trial: (1) either there was a secret bargain and therefore Ellis understood at the time of the trial that the prosecutor would reward him for his testimony; or (2) Ellis was kept in the dark, and thus the prosecutor deceived the court, the jury and Ellis as to his true intentions regarding his sentencing recommendation for Ellis.

The defendant asserts that either scenario results in constitutional error under *Giglio* v. *United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and *Napue* v. *Illinois,* 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959),[8] since the knowing presentation of false evidence by the state is incompatible with the " 'rudimentary demands of justice.' " *Giglio* v. *United States,* supra, 153, quoting *Mooney* v. *Holohan,* 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791 (1935). Furthermore, due process is similarly offended if the state,

___

[8] The defendant also argues that it would be appropriate for this court to invoke its inherent supervisory power to set aside his conviction pursuant to *State* v. *Cohane,* 193 Conn. 474, 499–500, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

"although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue* v. *Illinois,* supra, 269. If a government witness falsely denies having struck a bargain with the state, or substantially mischaracterizes the nature of the inducement, the state is obliged to correct the misconception. *Giglio* v. *United States,* supra; *Napue* v. *Illinois,* supra, 269–70. "Regardless of the lack of intent to lie on the part of the witness, *Giglio* and *Napue* require that the prosecutor apprise the court when he knows that his witness is giving testimony that is substantially misleading." *United States* v. *Harris,* 498 F.2d 1164, 1169 (3d Cir.), cert. denied sub nom. *Young* v. *United States,* 419 U.S. 1069, 95 S. Ct. 655, 42 L. Ed. 2d 665 (1974). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' *Napue* [v. *Illinois*], supra, 271." *Giglio* v. *United States,* supra, 154; see *United States* v. *Bagley,* 473 U.S. 667, 678–80, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

We conclude, however, that it is unnecessary to determine if either one of the defendant's factual scenarios is accurate. We hold that even if there were, as claimed by the defendant, a secret bargain or knowing misrepresentations by the state, a new trial would not be required because evidence of such would not "in any reasonable likelihood have affected the judgment of the jury." *Napue* v. *Illinois,* supra, 271. In short, we conclude that the fact that the state altered its sentencing recommendation for Ellis, after it represented at trial that it would not, constitutes harmless error in this case for the following reasons.

First and foremost is the fact that " '[t]he thrust of *Giglio* and its progeny [is] to ensure that the jury knows the facts that might motivate a witness in giving testimony . . . .' *Smith* v. *Kemp,* 715 F.2d 1459, 1467 (11th Cir.), cert. denied, 464 U.S. 1003, 104 S. Ct. 510, 78

L. Ed. 2d 699 (1983)." *Brown* v. *Wainwright,* 785 F.2d 1457, 1465 (11th Cir. 1986); see *United States* v. *Burroughs,* 830 F.2d 1574, 1578 (11th Cir. 1987), cert. denied sub nom. *Rogers* v. *United States,* 485 U.S. 969, 108 S. Ct. 1243, 99 L. Ed. 2d 442 (1988). Therefore, the state's mitigation of its initial sentencing recommendation is of little or no import in this case because the jury was already apprised of Ellis' motivation for testifying. As noted, when asked at trial what his understanding was with the state regarding his sentencing recommendation, Ellis replied: "That if I testify, I can get a lower sentence. . . . Hopefully something lower than the sentence that I'm getting."[9] Thus, "[t]he jury actually learned the primary motivation behind [Ellis'] testimony. This is all that *Giglio* requires." *United States* v. *Burroughs,* supra, 1579. Second, the jury was made well aware of the severity of the charge that Ellis originally faced, including the fact that by testifying he no longer faced the death penalty.

Therefore, "the question is not whether the verdict might have been different without any of [Ellis'] testimony, but whether the verdict might have been different if [Ellis'] testimony were further impeached by disclosure of the [alleged] deal." *Graham* v. *Wilson,* 828 F.2d 656, 660 (10th Cir. 1987), cert. denied, 484 U.S. 1069, 108 S. Ct. 1035, 98 L. Ed. 2d 999 (1988). Given the multitude of evidence presented at trial concerning Ellis' motivation for testifying, any benefit that the defendant might have derived from the jury's

---

[9] Moreover, questions exposing Ellis' expectation of leniency abound throughout the nearly 200 pages of his testimony. For example, defense counsel asked Ellis if his memory of the events surrounding Cunningham's death had improved so that he could take advantage of the plea bargain offered by the state. At another juncture, Ellis admitted that he would choose freedom over going to jail, and that in order to get his freedom he had to testify. It was also made clear to the jury that, regardless of the state's recommendation at Ellis' sentencing, Ellis' attorney had the right to argue for a lower sentence.

awareness of what the state was actually going to recommend at Ellis' sentencing hearing was minimal at best. Obviously, it would have been more forthright on the part of the state to admit during trial that it was going to ask the sentencing court to mitigate Ellis' sentence in consideration of his cooperation and testimony at the defendant's trial. The state's failure to do so did not, however, in this case, deprive the defendant of a fair trial.[10]

## III

The defendant further argues that the trial court erred in prohibiting him from cross-examining a physician concerning charges of official misconduct that had been brought against him. Specifically, the state called Dr. Elliot Gross to testify as to the victim's cause of death. Gross, who at the time of the trial was the chief medical examiner of New York city, had been the chief medical examiner of Connecticut at the time of Cunningham's murder. Gross did not perform the autopsy on the victim's body, but reviewed several photographs of the body, the official autopsy report, a report of the doctor who went to the crime scene, as well as a summary of the report made by the Enfield police department. After reviewing these materials, Gross arrived at the conclusion that the victim's death was the result of multiple stab wounds to the trunk.

During his cross-examination at trial, the defendant attempted to ask Gross about an "investigation Mayor Koch and the governor conducted" regarding him and the office that he headed, the New York city medical examiner's office. The state objected, and the jury was excused. The defendant explained that he wanted to conduct an inquiry into the investigation for "impeachment purposes to challenge [Gross'] opinion as an

---

[10] In addition, we conclude that this case does not warrant the use of this court's supervisory power to set aside the defendant's conviction.

[expert]." Although the defendant conceded that Gross had been exonerated of the "charges" arising out of the investigation, he argued that "despite the fact that he's been exonerated, if there were specific examples or cases in which there may have been some small problems or something more than a small problem, I think I should be able to inquire as to those specific cases, to test his credibility, reliability as a[n] expert." After hearing argument, the court sustained the state's objection to the proposed cross-examination and the defendant excepted.

The defendant claims that the trial court's refusal to allow his questioning of Gross regarding the investigation of him and his office constitutes reversible error both in terms of the common law of evidence and the confrontation clauses of the state and federal constitutions.[11] We do not agree. The confrontation clause of the sixth amendment to the United States constitution guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const., amend. VI. " 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " (Emphasis omitted.) *Davis* v. *Alaska,* 415 U.S. 308, 315–16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), quoting 5 J. Wigmore, Evidence (3d Ed. 1940) § 1395, p. 123. Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevent." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). "[T]he defendants' right to confront and to cross-examine witnesses against them is not absolute,

---

[11] U.S. Const., amend. VI; Conn. Const., art. I, § 8.

but must, on occasion, bow to other legitimate interests in the criminal trial process." *In re Robert H.,* 199 Conn. 693, 705, 509 A.2d 475 (1986).

In the present case, the trial court acted well within its discretion. First, Gross had been exonerated of all charges arising out of the investigation; thus, evidence pertaining to the investigation was of dubious value. Second, questions regarding Gross' conclusions in other cases would inevitably have led to a "mini-trial" of each of those cases. Even if the defendant were able to extract an admission of negligence from Gross, the weight to be given such an admission would not have been immediately apparent. In order for the jury to assess such an admission in weighing Gross' opinion in the present case, the jury would have had to have known, at a minimum, the circumstances of the other cases, the nature of the mistakes made in those cases, how they occurred, and what, if anything, about those cases made it more likely that Gross was mistaken in his opinion concerning the cause of Cunningham's death. It was, therefore, well within the discretion of the trial court to prohibit such a time-consuming and collateral inquiry.

## IV

Finally, the defendant argues that the trial court erred in failing to ascertain, on the record, whether he had made a knowing, voluntary and intelligent waiver of his right to testify on his own behalf. We do not agree. The United States Supreme Court has explicitly confirmed that criminal defendants have a constitutional right to testify on their own behalf. *Rock* v. *Arkansas,* 483 U.S. 44, 51–53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). The defendant argues that, as an incident to this right, the trial judge has an affirmative duty to canvass the defendant to ensure that his waiver of his right to testify is knowing, voluntary and intelli-

gent. We do not believe that federal law contains any such procedural requirement in a case such as this where the defendant has not alleged that he wanted to testify or that he did not know that he could testify. See *Siciliano* v. *Vose,* 834 F.2d 29, 30 (1st Cir. 1987); *United States* v. *Bernloehr,* 833 F.2d 749, 751–52 (8th Cir. 1987); *United States* v. *Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983), cert. denied, 465 U.S. 1036, 104 S. Ct. 1310, 79 L. Ed. 2d 707 (1984); but see *People* v. *Curtis,* 681 P.2d 504, 512–13 (Colo. 1984). As the First Circuit Court of Appeals stated in *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 375 (1st Cir.), cert. denied, 474 U.S. 847, 106 S. Ct. 139, 88 L. Ed. 2d 115 (1985): "The accused must act affirmatively. While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the 'if' and 'when' of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." Accordingly, we find that the trial judge had no duty to canvass the defendant in this case regarding his waiver of his right to testify on his own behalf.

There is no error.

In this opinion the other justices concurred.