GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS *v.*
TOWN OF TRUMBULL
(AC 17243)

GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS *v.*
PEOPLE'S BANK
(AC 17244)

GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS *v.*
TOWN OF SHELTON ET AL.
(AC 17245)

GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS *v.*
TOWN OF SEYMOUR
(AC 17246)

O'Connell, C. J., and Hennessy and Daly, Js.

Argued May 4—officially released August 11, 1998

*Michael D. O'Connell,* with whom were *Matthew W. Den Ouden* and, on the brief, *Julia B. Morris,* for the appellant (plaintiff).

*Richard Blumenthal,* attorney general, with whom were *Susan Quinn Cobb,* assistant attorney general, and, on the brief, *Carolyn K. Querijero,* assistant attorney general, for the appellee (intervening defendant state of Connecticut).

*Opinion*

DALY, J. The plaintiff appeals from the granting of motions to dismiss and for summary judgment in favor of the defendants filed by the intervening defendant state of Connecticut in the consolidated actions to quiet title to property in the towns of Trumbull, Shelton and Seymour, and to property held by People's Bank in Bridgeport. We affirm the judgments of the trial court.

Five actions were filed between August and September, 1993, by the Golden Hill Paugussett Tribe of Indians against (1) the town of Southbury in August, 1993, (2) the town of Trumbull on August 6, 1993, (3) the town of Shelton on August 18, 1993, (4) People's Bank on August 31, 1993 and (5) the town of Seymour on September 14, 1993.

These actions arise out of events that are alleged to have occurred more than 300 years ago. In its complaints, the plaintiff claims that its tribe, from time

immemorial until the arrival of English colonists, had possessed, occupied and controlled much of what is now southwestern Connecticut. The plaintiff further claims that in a deed of 1706, the tribe had transferred to a group of colonists the tribe's Indian title to certain lands, but had "reserved" to the tribe the land now in dispute. The plaintiff admits that in the years 1733 to 1759, a series of additional deeds had purported to transfer to the colonists the reserved land as well. The plaintiff contends, however, that those later deeds had been void ab initio because the transfers had occurred without the Colonial General Court's express consent in violation of General Court enactments of 1663, 1680 and 1717. In light of the alleged invalidity of the later deeds, the plaintiff contends that its "Indian title"[1] in the reserved land never had been properly extinguished and, therefore, that it has a present right to occupy the land.

The action in *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 651 A.2d 1246 (1995), was initiated as a purported class action by Quiet Hawk in the name of the tribe. It proceeded to trial, and the trial court held an evidentiary hearing on the defendants' motions to dismiss based on Quiet Hawk's[2] lack of standing or authority to institute the action. The plaintiff refused, on the ground of tribal sovereignty, to offer any evidence of authority to sue on behalf of

---

[1] "[A]lthough fee title to the lands occupied by Indians when the colonists arrived became vested in the sovereign—first the discovering European nation [Great Britain] and later the original States and the United States— a right of occupancy in the Indian tribes was nevertheless recognized. That right, sometimes called Indian title and good against all but the sovereign, could be terminated only by sovereign act." *Oneida Indian Nation of New York* v. *Oneida*, 414 U.S. 661, 667, 94 S. Ct. 772, 39 L. Ed. 2d 73 (1974).

[2] As reflected in both the trial court and Supreme Court decisions in *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, supra, 231 Conn. 567–68, Quiet Hawk and Big Eagle are the tribal leaders in the compulsory statutory filings under General Statutes § 47-66i.

the tribe other than copies of documents filed with the governor pursuant to General Statutes § 47-66i.[3]

The only evidence submitted in the trial court indicated that only the tribal council and not Quiet Hawk had authority to initiate legal actions. In *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, supra, 231 Conn. 563, our Supreme Court, in upholding the trial court, stated: "Like the trial court, we offer no opinion as to who did have authority to sue on the tribe's behalf, and affirm only the finding that Quiet Hawk did not have such authority." Id., 568–69 n.4. We are persuaded that the trial court's actions were consistent with tribal sovereignty.

The trial court granted the defendants' motions to dismiss and for summary judgment on the basis of the lack of evidence that the tribal council condoned Quiet Hawk's authority and relied on the doctrine of collateral estoppel. The plaintiff claims that the trial court should have conducted an evidentiary hearing during which the plaintiff could have presented evidence concerning the ratification by tribe members of Quiet Hawk's

---

[3] General Statutes § 47-66i provides: "Method of selecting tribal leaders. Disputes. (a) Each tribal leader shall file with the Governor his name and a written description of the method of selecting tribal leaders and the process by which tribal leaders exercise their authority. The Governor shall file such description with the Secretary of the State and the Indian Affairs Council established under section 47-59b.

"(b) A leadership dispute shall be resolved in accordance with tribal usage and practice. Upon request of a party to a dispute, the dispute may be settled by a council. Each party to the dispute shall appoint a member to the council and the parties shall jointly appoint one or two additional members provided the number of members of the council shall be an odd number. If the parties cannot agree on any joint appointment, the Governor shall appoint any such member who shall be a person knowledgeable in Indian affairs. The decision of the council shall be final on substantive issues. An appeal may be taken to the Superior Court to determine if provisions of the written description filed with the Secretary of the State pursuant to this section have been followed. If the court finds that the dispute was not resolved in accordance with the provisions of the written description, it shall remand the matter with instructions to reinstitute proceedings, in accordance with such provisions."

authority to have brought these claims, which were filed at approximately the same time as the *Southbury* action.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991); *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990).

The plaintiff was given the opportunity to present evidence regarding Quiet Hawk's authority in the *Southbury* action, but decided not to do so. The plaintiff is now precluded from relitigating the issue.

The judgments are affirmed.

In this opinion the other judges concurred.