STATE OF CONNECTICUT *v.* LUCIS RICHARDSON
(AC 25177)

Dranginis, DiPentima and McLachlan, Js.

Argued September 15—officially released November 16, 2004

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Lucis Richardson, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c. The defendant claims that the court improperly denied his request for an evidentiary hearing on the motion to suppress his February 29, 1996 statement in violation of his due process rights. In addition, he claims that prosecutorial misconduct deprived him of the right to a fair trial. We affirm the judgment of the trial court.

In the early hours of February 24, 1996, the defendant was involved in the attempted robbery of a Hartford taxicab driver that left the driver dead from multiple stab wounds to the chest. Later that day, after assurances from the police that he was not a suspect, but merely a witness, the defendant accompanied two officers to the police station. There, he gave an oral statement in which he implicated two individuals as the perpetrators of the robbery attempt (February 24 statement). Three days later, the defendant was arrested. That day, he gave a second statement in which he confessed to his involvement in the crime (February 29 statement).

The defendant was charged by substitute information with the crimes of felony murder, robbery in the first degree, attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree. Prior to trial, the defendant filed a motion to suppress

all oral and written statements he allegedly had made to the police, together with any fruits thereof. At a pretrial suppression hearing, the court denied the motion. Following a trial by jury, the defendant was convicted of attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree. A mistrial was declared on the felony murder charge. The defendant was sentenced to a total effective term of thirty-seven years imprisonment.

From that judgment, the defendant appealed. In that appeal, the defendant claimed that the court improperly had denied his motion to suppress. Affirming the judgment of the trial court, we concluded that "the defendant's February 29, 1996 statement properly was admitted." *State* v. *Richardson,* 66 Conn. App. 724, 734, 785 A.2d 1209 (2001) (*Richardson I*). We specifically noted that the February 29 statement "was made after a proper administration of *Miranda* warnings and a knowing and voluntary waiver of *Miranda* rights, as evidenced by the defendant's signature on the advisement of rights form, as well as the testimony of those who witnessed the defendant sign the advisement form on February 29." *State* v. *Richardson,* supra, 734. The defendant did not seek certification to appeal to our Supreme Court.

Thereafter, the state again charged the defendant with felony murder. The defendant again filed a motion to suppress his statements to the police, which the court denied. After a trial by jury, the defendant was found guilty, and the court rendered judgment accordingly. The defendant was sentenced to a term of fifty years imprisonment to run concurrently with his earlier sentence. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly denied his request for an evidentiary hearing on his

motion to suppress his February 29 statement in violation of his due process rights. He contends that consideration of evidence not presented in *Richardson I* concerning his limited mental faculties would alter the determination of the admissibility of the February 29 statement.[1] We conclude that the defendant's claim is barred under the doctrine of res judicata.

The issue of whether the doctrine of res judicata applies to the facts of this case presents a question of law. Our review, therefore, is plenary. See *Gaynor* v. *Payne*, 261 Conn. 585, 595, 804 A.2d 170 (2002).

"Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered in a practical frame and viewed with an eye to all the circumstances of the proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Paradise*, 213 Conn. 388, 393, 567 A.2d 1221 (1990). When a claim of constitutional dimension is asserted, "[t]he interest in achieving finality in criminal proceedings must be balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights." *State* v. *Aillon*, 189 Conn. 416, 425, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983).

---

[1] On September 26, 2002, the court permitted the defendant to make an offer of proof. Counsel for the defendant stated that the school psychologist at the MacDougall-Walker Reception/Special Management Unit correctional facility was under subpoena and that the psychologist had provided her with the defendant's school records dating back to the first grade. At oral argument, the defendant conceded that those records were not marked for identification.

The predicate for the application of res judicata in the present case is established by this court's final judgment in *Richardson I* rejecting the defendant's claim that the February 29 statement should have been suppressed. During the first trial, the defendant filed a motion to suppress all statements he made to the police. An evidentiary hearing on the matter was held on October 27, 1998, at which the defendant maintained that he had not made a knowing, voluntary and intelligent waiver of his *Miranda* rights with regard to the February 29 statement.

During the hearing, the state indicated that the defendant, age sixteen at the time of the crime, possessed a ninth grade education. The court heard testimony from the defendant, who denied ever making either the February 24 or February 29 statements. In an oral ruling, the court specifically stated that "[t]he only thing from the record that could even give the court any concern is the age of the defendant and certain indications of maybe lack of sophistication. Even though he had some criminal involvement at the age of sixteen, [it was] not that much. And even the fact that his own admissions . . . of what occurred shows an indication of lack of intelligence." The court concluded that in light of the testimony of the other witnesses, the defendant's testimony was not credible and therefore denied the motion to suppress.[2]

In *Richardson I*, the defendant challenged that ruling. The defendant first claimed that the February 24 state-

---

[2] The court stated: "Four witness have come in and testified—well, three testified they saw the advisement of rights. The fourth witness also further corroborates the fact of the way [the defendant] was trying to be truthful, he was trying to be cooperative. He did, in fact, give a statement. In light of the fact, for him to come in and to testify under oath, his testimony is totally incredible on any contradiction of the other people because the court could not conceive at all that it happened the way he said it did; that the four people—that there was not a statement taken from him and an admission made."

ment should have been suppressed because he was in custody at that time, which mandated the administration of *Miranda* warnings. *State* v. *Richardson*, supra, 66 Conn. App. 731. The defendant further claimed that because the February 29 statement stemmed from his February 24 statement, it, too, required suppression. Id., 733. Citing *State* v. *Atkinson*, 235 Conn. 748, 757 n.15, 670 A.2d 276 (1996), this court noted that "the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." (Internal quotation marks omitted.) *State* v. *Richardson*, supra, 734. Central to the resolution of the defendant's claim, therefore, was a determination of whether the February 29 statement was knowingly and voluntarily made. We concluded that the defendant's February 29 statement "was made after a proper administration of *Miranda* warnings and a knowing and voluntary waiver of *Miranda* rights, as evidenced by the defendant's signature on the advisement of rights form, as well as the testimony of those who witnessed the defendant sign the advisement form on February 29. . . . [T]he defendant's February 29, 1996 statement properly was admitted." Id., 734.

The applicability of res judicata hinges on whether the present claim is sufficiently similar to the previous claim to warrant our giving preclusive effect to the prior judgment. See *State* v. *Aillon*, supra, 189 Conn. 426. In *Richardson I* and in the present case, the defendant maintained that because his February 29 statement was not suppressed, his due process rights were violated.

During the October 27, 1998 suppression hearing, the defendant maintained that he had not made a knowing, voluntary and intelligent waiver of his *Miranda* rights with regard to the February 29 statement. The transcript of that hearing indicates that the issue of the defendant's limited mental faculties was considered by the trial court in *Richardson I*. Indeed, the defendant noted in

his *Richardson I* brief that the trial court had made a "specific finding" that he possessed a lack of intelligence. Likewise, the essence of the defendant's present claim is that the trial court should have held an evidentiary hearing to determine whether the defendant's limited mental faculties affected his ability to make a knowing and voluntary waiver of his *Miranda* rights with regard to the February 29 statement.

As was the case in *Aillon,* in the present case, no valid reason has been alleged as to why the defendant could not have brought the present claim when the prior one was brought. See *State* v. *Aillon,* supra, 189 Conn. 427. "The present claim relies on precisely the same facts, sought to be supplemented with [additional] evidence . . . to advance a legal argument only slightly different . . . . This slight shift in evidentiary basis and substantive theory of law does not constitute a new claim." Id., 426. The evidence proffered by the defendant in support of his claim is not new, but rather additional evidence indicating that the defendant possesses limited mental faculties. As the Restatement (Second) of Judgments provides in relevant part: "A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment. . . ." 1 Restatement (Second), Judgments § 25, comment (b) (1982). Our Supreme Court has held that "[the fact that] identical grounds for relief may be supported by different factual allegations or different legal arguments or couched in different language renders those grounds no less identical." *State* v. *Aillon,* supra, 427.

We conclude that the defendant's present claim is sufficiently similar to his previous claim to warrant our giving preclusive effect to the prior judgment. Because the defendant's claim in *Richardson I* and his present claim stem from the same factual and evidentiary foun-

dation, our holding in *Richardson I* is res judicata with respect to his due process claim in the present case.

## II

The defendant claims that prosecutorial misconduct deprived him of the right to a fair trial. We disagree.

Our Supreme Court recently clarified its due process analysis in cases involving incidents of prosecutorial misconduct that were not objected to at trial. In *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004), the court held that "following a determination that prosecutorial misconduct has occurred, regardless of whether it was objected to, an appellate court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] to the entire trial."[3] As a result, we review the defendant's claim despite the fact that the alleged misconduct was not objected to at trial.

The defendant contends that the prosecutor improperly commented on facts outside the record during closing argument and vouched for the credibility of the February 29 statement. Specifically, he claims that the prosecutor improperly remarked that the February 29 statement contained information about the alleged blows to the taxicab driver's head that the police were unaware of prior to obtaining that statement.[4]

---

[3] The *Williams* factors are: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the misconduct; (3) the frequency of the misconduct; (4) the centrality of the misconduct to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case. *State* v. *Williams*, supra, 204 Conn. 540.

[4] During rebuttal argument, the prosecutor stated: "Why is the statement credible? Well, it gave some information that the police didn't have. Now, [the defendant's] first statement [was signed Lucis] McCaskill, state's [exhibit fifteen]. He never once mentions the fact that the cab driver got hit in the head. Why? Because it was [Phillip Milling, a friend of the defendant, and Robin Ledbetter, a friend of the defendant's girlfriend] who did it. He wasn't even down there. All he knew is what he saw beforehand and what he saw afterward. And we know from [the state's medical examiner] that [he] made

"A prosecutor may invite the jury to draw reasonable inferences from the evidence, however, he or she may not invite sheer speculation unconnected to evidence." (Internal quotation marks omitted.) *State* v. *Fields*, 265 Conn. 184, 208, 827 A.2d 690 (2003). "[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 583.

In the present case, the jury heard testimony from Danixsa Sanchez, who was at the defendant's home on February 24, 1996. Sanchez testified that immediately following the attempted robbery, the defendant told her that when the taxicab driver refused to surrender the money, the defendant "started hitting the cab driver in the head with [a] drill." Neither the medical examiner's testimony nor the February 24 statement mention any injury to the taxicab driver's head. Viewed in light of that evidence, the prosecutor's comment was entirely proper. It underscored an inference that the jury could have drawn on its own, on the basis of the evidence that was presented. Because we conclude that the prosecutor's comment was not improper, our inquiry ends

no findings with respect to any blunt force trauma to the head. So, how does it end up in the defendant's second statement? Why does it end up in the defendant's second statement if the police had no information that the cab driver, [Colin] Williams, was ever hit in the head? Because it happened. What is told to you by the defendant in state's [exhibit nineteen] is what happened. There would be no reason to account for contusions; they didn't exist. But what the defendant does tell you in this statement is that this stabbing occurred in the course [of] and in furtherance of and, or, in flight therefrom."

and we need not consider the *Williams* factors. See *State* v. *Coney*, 266 Conn. 787, 821, 835 A.2d 977 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.