STATE OF CONNECTICUT *v.* FENIX D'HAITY
(AC 25306)

Bishop, Gruendel and Dupont, Js.

Argued October 18, 2006—officially released January 30, 2007

*Roy S. Ward*, for the appellant (defendant).

*Proloy K. Das*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard Colangelo*, senior assistant state's attorney, for the appellee (state).

### Opinion

GRUENDEL, J. The defendant, Fenix D'Haity, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[1] and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A).[2] On appeal,

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

the defendant claims that (1) the evidence was insufficient to support the conviction, (2) he was denied his due process right to a fair trial as a result of prosecutorial misconduct and (3) the trial court improperly (a) failed to rule on his motion for a judgment of acquittal at the close of the state's case-in-chief and (b) permitted the introduction of evidence of uncharged misconduct. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On August 2, 2001, the defendant called the victim, A,[3] and asked her to go out with him.[4] They had talked three weeks earlier, during which time A had given the defendant her number. After A accepted his invitation, the defendant picked A up in his car and the two of them, accompanied by two male friends of the defendant, drove to a park where they exited the vehicle and proceeded to smoke marijuana that was in the defendant's possession. After smoking for about half an hour, A became thirsty, and the defendant agreed to drive with her across the street to purchase some water from a gasoline station.

After purchasing the water, the defendant then drove the car to a secluded location. When A indicated that she wanted to go home, the defendant started to touch her in a sexually aggressive manner. Despite A's telling him to stop and that she thought of him "as a friend, that's it," the defendant climbed over his seat, placed himself on top of her and held her neck. He removed A's pants, digitally penetrated her vagina and attempted to touch her breasts. When A continued to resist, the defendant attempted to force her to perform fellatio on

---

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] A and the defendant had been acquaintances for a few years, and she considered him "a friend of a friend."

him. When he got off of her, she opened the door and exited the vehicle wearing only her shirt and underwear.

A did not know where they were and started walking away. The defendant exited the car and told her to get back in, saying that he would return her pants and that they would go to pick up the others. When A returned to the car and reached in to retrieve her pants, the defendant grabbed her arm and pulled her back into the car. He climbed on top of her once again and penetrated A's vagina with his penis. After having intercourse with her, the defendant ejaculated on A's shirt. A put on her pants and was silent as the defendant drove back to the park to meet the others. When they dropped her off at home, she said to the defendant, "You're fucked," and ran into the house. The defendant chased after A and began calling her on his cellular telephone while he was still outside the house, but she refused to answer his calls.

After hysterically running back and forth between her bedroom and the bathroom for a time, A was able to compose herself and make a 911 telephone call to report that she had been raped. When the operator tried to connect her to someone in her local area, however, A "freaked" and hung up. Her mother accompanied her the next morning to the police station where A reported the rape. The police took her to a hospital where a rape kit and medical examination were performed.

The defendant ultimately was charged with one count of sexual assault in the first degree, one count of kidnapping in the first degree and, under a separate information, one count of intimidating a witness in violation of General Statutes § 53a-151. After a ten day trial, during which the defendant maintained that the encounter was consensual, the jury found the defendant guilty on the first two counts and not guilty of the charge of intimidating a witness. He was sentenced on each of the first

two counts to twelve years incarceration followed by eight years of special parole, to run concurrently. This appeal followed.

## I

The defendant first claims that the evidence was insufficient to support the conviction on both charges. Specifically, he contends that A's testimony was incredible and that her account of the crimes was physically impossible and therefore that the state failed to prove each element of the crimes for which he was convicted.[5] We disagree.

We first set forth the well settled standard of review employed in a sufficiency of the evidence claim. "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the

---

[5] We note that, in support of his argument, the defendant claims that the court's delay in ruling on his motion for a judgment of acquittal, filed after the state's case-in-chief, precludes us from considering more than the evidence from the state's case-in-chief when assessing whether the evidence was sufficient to support his conviction. In support of his argument, the defendant cites Practice Book § 42-41, which provides: "If the motion [for judgment of acquittal] is made after the close of the prosecution's case in chief, the judicial authority *shall* either grant or deny the motion before calling upon the defendant to present the defendant's case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so." (Emphasis added.) See also *State* v. *Higgins*, 74 Conn. App. 473, 481, 811 A. 2d 765 ("because the court delayed ruling on the motion for a judgment of acquittal *without prejudice*, we conclude, as did the trial court, that to avoid prejudicing the defendant, only the evidence that was presented by the state in its case-in-chief is material to consideration of the defendant's claim of insufficient evidence" [emphasis in original]), cert. denied, 262 Conn. 950, 817 A.2d 110 (2003). Our review of the record, however, demonstrates that the court did deny the motion as to the first two counts and delayed ruling only on the witness intimidation charge, of which the defendant was acquitted. The defendant's argument, therefore, is unavailing.

cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667–69, 804 A.2d 810 (2002).

To warrant a conviction for sexual assault in the first degree in violation of § 53a-70 (a) (1), the state bore the burden of proving that the defendant used force or the threat of force to compel A to engage in sexual intercourse. See *State* v. *Mahon*, 97 Conn. App. 503, 510, 905 A.2d 678, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006). Likewise, the state had the burden of proving that the defendant had abducted and restrained A with the intent to inflict physical injury or to sexually attack

her in order to warrant a conviction for kidnapping in the first degree in violation of § 53a-92 (a) (2) (A). See *State* v. *Spencer*, 81 Conn. App. 320, 338, 840 A.2d 7 (2004), rev'd in part on other grounds, 275 Conn. 171, 881 A.2d 209 (2005). At no point, however, does the defendant argue that the testimony, if believed, was insufficient to support his conviction of the charges; rather, he argues that the testimony should not have been believed.[6]

The defendant's claim, although clothed in sufficiency of the evidence language, in reality challenges the credibility of A's testimony. His brief is rife with examples of how "the incident could not possibly have occurred as described," and how A's testimony was "inconsistent, uncorroborated, frequently incredible and at critical points, physically impossible." "Our task is to view the evidence in the light most favorable to sustaining the verdict before determining if the jury reasonably could have concluded that such evidence established guilt beyond a reasonable doubt. . . . We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on

---

[6] In his brief, the defendant states that "we recognize that fact finders are not infallible and that mistakes do occur." In his reply brief, however, he cites *State* v. *Chin Lung*, 106 Conn. 701, 704, 139 A. 91 (1927), for the proposition that "[w]hen the manifest injustice of the verdict is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality, the verdict will be set aside even though there was conflicting evidence." As there is nothing in the record that demonstrates that the jury was influenced by ignorance, prejudice, corruption or partiality, we are unpersuaded by this auxiliary argument.

the basis of its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *State* v. *Osorio*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005). On the record before us, the jury reasonably was free to credit the testimony of A. Because we cannot decide issues of credibility, the defendant's first claim fails.

## II

The defendant next claims that he was denied his due process right to a fair trial because the prosecutor engaged in misconduct during closing argument. Specifically, he claims that the prosecutor improperly (1) shifted the burden of proof from the state to the defendant, (2) instructed the jurors that they need not accept the evidence put on by the defendant, (3) misstated facts and testimony and (4) vouched for the credibility of the state's witnesses.[7] We disagree.

Although the defendant objected to some of the language he now claims resulted in prosecutorial misconduct, we note at the outset that a claim of prosecutorial misconduct need not be preserved to warrant our review. "Typically, if a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). . . . In cases of unpreserved claims of prosecutorial

---

[7] The defendant additionally argues in his brief that "there were no curative instructions given to lessen or eliminate the impact of the misconduct." He cites case law to claim that such curative instructions may have alleviated the detrimental impact of the misconduct. Nevertheless, we decline to review that claim under the guise of prosecutorial misconduct. The presence of a curative instruction is but one of several factors to be considered in evaluating the harmfulness of misconduct in a given instance. See *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

misconduct, however, it is unnecessary for the defendant to seek to prevail under the specific requirements of . . . *Golding* . . . and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)."[8] (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 173–74, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

"In analyzing claims of prosecutorial misconduct, [a reviewing court should] engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Powell*, 93 Conn. App. 592, 603–604, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006).[9]

In addition, we are guided by standards of review concerning claims of prosecutorial misconduct during

[8] "[The *Williams*] factors include the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case. . . . The consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus makes superfluous, a separate application of the *Golding* test." (Citation omitted.) *State* v. *Warholic*, 278 Conn. 354, 361, 897 A.2d 569 (2006).

[9] The state proffers a novel policy argument that the first step in finding prosecutorial misconduct should not be labeled misconduct, but rather error, as the word itself could be misleading in the case where a defendant is not deprived of a fair trial and there is no prosecutorial misconduct. Although we are not unmindful of the potential confusion, we decline the opportunity to address the state's semantic argument.

closing argument. "[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"Or to put it another way while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. . . . A prosecutor must draw a careful line. On the one hand, he should be fair; he should not seek to arouse passion or engender prejudice. On the other hand, earnestness or even a stirring eloquence cannot convict him of hitting foul blows." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 744–46, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

With these principles in mind, we address each of the defendant's four claims of prosecutorial misconduct.

## A

First, the defendant claims that the prosecutor improperly shifted the burden of proof to him in five separate instances during closing arguments. In particular, he argues that the prosecutor accused him of failing to explain the abrasion on A's shoulder, the testimony of one of the male friends regarding what occurred at the park, how semen was found on A's underwear, where the defendant's friends lived and the testimony from his mother regarding the type of eggs he made for her the next morning.

Our review of the record reveals that the prosecutor did not attempt to shift the burden of proof to the defendant. In fact, at the commencement of his closing argument, the prosecutor affirmed that "in order to prove those crimes, I have to prove to you beyond a reasonable doubt each of the elements in each crime." Examined in context, the prosecutor's questioning of the defendant's failure to explain these instances merely appealed to the jury's common sense. See *State* v. *Chasse*, 51 Conn. App. 345, 361, 721 A.2d 1212 (1998) ("it is entirely proper for counsel to appeal to a jury's common sense in closing remarks"), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Furthermore, "[t]he state also is entitled to comment on the weaknesses in the defendant's case and on the strength of its case. . . . The state is free to remark on the defendant's failure to support his factual theories . . . ." (Citations omitted.) *State* v. *Lindo*, 75 Conn. App. 408, 416, 816 A.2d 641, cert. denied, 263 Conn. 917, 821 A.2d 771 (2003). The prosecutor is permitted to comment on the lack of support for the defendant's theory of consent. See *State* v. *Cotton*, 77 Conn. App. 749, 771, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003).

In addition, the court instructed the jury as to the state's burden to prove each element of the crime

beyond a reasonable doubt, as well as the defendant's presumption of innocence and the jury's duty to consider all of the evidence in reaching a decision. Because "we presume, absent a fair indication to the contrary, that the jury followed the instruction of the court as to the law"; *State* v. *Lasky*, 43 Conn. App. 619, 629, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997); we conclude that the burden of proof properly remained on the state to prove each and every element of the crimes beyond a reasonable doubt.

## B

The defendant also claims that misconduct occurred when the prosecutor told the jurors that they need not consider evidence put on by the defendant, thereby allegedly violating his rights to confront and to cross-examine his accusers and to present a defense. We disagree.

The defendant cites one particular sentence from the prosecutor's closing argument: "Just because [defense counsel] comes up here and says to you, 'Hey, look at this,' doesn't mean you have to believe it or look at it." We note that "we must consider the arguments of counsel in the context of the entire trial. A sentence here and a sentence there taken out of context may appear to be misleading or without the benefit of facts in evidence." *State* v. *Galarza*, 97 Conn. App. 444, 472, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006). The prosecutor stated: "The burden of proof is absolutely beyond a reasonable doubt. Judge Comerford is going [to] tell you what beyond a reasonable doubt is. He's going [to] tell you that it is not a doubt suggested by counsel. Just because [defense counsel] comes up here and says to you, 'Hey, look at this,' doesn't mean you have to believe it or look at it." In

overruling the defendant's objection to the statement, the court explained that it was simply argument.[10]

"Our decisional law on prosecutorial misconduct makes clear that, as the state's advocate, a prosecutor may comment on the evidence adduced at trial and argue inferences that the jurors might draw therefrom." *State* v. *Sargent*, 87 Conn. App. 24, 34, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). From our review of the record, it is clear that the prosecutor did not engage in misconduct by arguing that the jury need not believe all of the evidence that the defendant offered.

C

The defendant further argues that the prosecutor misstated facts and testimony on two occasions. The first involves the prosecutor's cross-examination of the defendant regarding the eggs that he professed to have prepared for his mother the morning after the incident:

"[The Prosecutor]: Okay. What kind of eggs did you make for your mother on August 3, 2001?

"[The Defendant]: I usually make an omelette.

"[The Prosecutor]: Not usually, what kind of eggs did you make her that morning?

"[The Defendant]: Most likely scrambled eggs or sunny side up. Fried eggs. Fried.

"[The Prosecutor]: Fried?

"[The Defendant]: Yeah."

---

[10] The statement was further put into context by the court's subsequent jury instruction, in which it stated: "A reasonable doubt is a doubt for which a valid reason can be assigned. It's a doubt which is something more than a guess or surmise. It is not conjecture. It is not fanciful. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubt. Nor is it doubt suggested by counsel which is not warranted by the evidence or lack of evidence in the case."

The statement with which the defendant takes issue occurred during the prosecutor's closing argument: "What else did you hear from [the defendant]? If you recall the first question that I asked, what kind of eggs did you make your mother on August 3? Scrambled? No. Over easy? Nothing to do with the case. Which one was it? Credibility. Believability. If you believe the victim, the defendant is guilty."

The second statement involved the prosecutor's direct examination of Carl Straight, one of the police officers who initially questioned the defendant. The prosecutor, during closing argument, stated: "What did [the defendant] tell Officer Straight? Did he tell him the truth? Did he tell him anything initially? No. Did he tell him anything the second time [the defendant was questioned]? Not really. [The defendant] wants you to believe that he told Officer Straight his friends' names and where they lived, at least described where they lived. Officer Straight testified to you that the defendant didn't do that, didn't tell you something as simple, didn't tell you something as simple as his friends' names or addresses. Credibility. Believability. If you believe the victim, the defendant is guilty."

"[I]n fulfilling his duties, the prosecutor must confine the arguments to the evidence in the record." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 263, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004). "It is well settled that a prosecutor must not comment on evidence that is not part of the record, nor is he to comment unfairly on the evidence adduced at trial so as to mislead the jury. . . . We certainly do not condone paraphrasing or embellishing on a witness' testimony, but we also recognize that the parties are allowed a certain degree of latitude to express their views of what evidence was presented at trial." *State* v. *McKiernan*, 78 Conn. App. 182, 201, 826 A.2d 1210,

cert. denied, 266 Conn. 902, 832 A.2d 66 (2003). A careful review of the record reveals that the prosecutor's comments were intended to question the defendant's lack of candor in his answers about the eggs he had prepared for his mother and when he spoke to the police. The court properly instructed the jury that its recollection and interpretation of the evidence was controlling. We conclude that the prosecutor's comments at issue did not deprive the defendant of a fair trial.

## D

The defendant also claims that the prosecutor, during closing remarks, invaded the province of the jury. In essence, his claim centers on whether the prosecutor committed misconduct by expressing his opinion as to the credibility of the state's witnesses.

"[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *State* v. *Morales*, 90 Conn. App. 82, 95, 876 A.2d 561, cert. denied, 275 Conn. 924, 883 A.2d 1250 (2005). "The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions. . . . While the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses." (Citation

omitted; internal quotation marks omitted.) *State* v. *Payne*, 260 Conn. 446, 454, 797 A.2d 1088 (2002).

The defendant cites seven separate occasions during which he believes the prosecutor improperly offered his opinion. In reviewing all of the instances in context, coupled with the evidence on the record, we conclude that no misconduct occurred. "[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Richardson*, 86 Conn. App. 32, 41, 860 A.2d 272 (2004), cert. denied, 273 Conn. 907, 868 A.2d 748, cert. denied, 545 U.S. 1107, 125 S. Ct. 2550, 162 L. Ed. 2d 281 (2005). Thus, we are satisfied that the prosecutor's statements during closing remarks were proper comment on the evidence and did not constitute misconduct.

### III

The defendant's next claim is that the court improperly failed to rule on his motion for a judgment of acquittal on the charge of intimidation of a witness. Specifically, he claims that the court should not have (1) reserved decision on his motion for a judgment of acquittal, filed after the state's case-in-chief, (2) denied the motion at the close of his case and (3) instructed the jury on consciousness of guilt. The defendant's first two arguments are based on language contained in Practice Book §§ 42-40 and 42-41. Practice Book § 42-40 provides in relevant part: "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon its own motion,

the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense *for which the evidence would not reasonably permit a finding of guilty. . . ."* (Emphasis added.) Practice Book § 42-41 provides: "If the motion is made after the close of the prosecution's case in chief, the judicial authority shall either grant or deny the motion before calling upon the defendant to present the defendant's case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so."

The defendant filed a motion for a judgment of acquittal on all three charges at the end of the state's case-in-chief; the court denied the motion as to the charges of sexual assault in the first degree and kidnapping in the first degree and reserved decision on the charge of intimidating a witness. In so doing, the court stated to counsel: "The court is going to reserve its decision on [the] motion to acquit as to the second information, the information charging intimidating a witness." Although the defendant now claims that the court reserved its decision in violation of the mandate set forth in Practice Book § 42-41, which required the court either to grant or to deny the motion, we conclude that he is no longer aggrieved due to his subsequent acquittal on the charge of intimidation of a witness. "[N]o person is entitled to set the machinery of the courts into operation unless for the purpose of obtaining redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or representative capacity." *Waterbury Trust Co.* v. *Porter*, 130 Conn. 494, 498, 35 A.2d 837 (1944).[11]

---

[11] The court specifically informed the defendant's attorney that "there's sufficient evidence to warrant the charge [of intimidation of a witness] to be given and place it in the hands of the jury, and that's what we'll do." The defendant's attorney did not object.

The more pertinent question is whether the jury charge on consciousness of guilt (1) would not have been included had the court granted the motion for a judgment of acquittal and (2) might have influenced the jury to find the defendant guilty of the other two charges.

The following facts are necessary for our disposition of the defendant's claim. On the evening of March 14, 2002, A was working in a retail store in the mall. The defendant walked into the store and began to look around. Frightened, A called the police to tell them of the situation. A friend who was with A at the time encountered the defendant outside of the store. The defendant told him to tell A that he was going to leave town but that he would be back if he had to and to be careful. After that incident, the state submitted a second information charging the defendant with intimidation of a witness in violation of § 53a-151a. After the state had concluded its case-in-chief, the defendant filed a motion for a judgment of acquittal on all counts. The court denied the motion as to the charges of sexual assault in the first degree and kidnapping in the first degree but reserved decision on the charge of intimidation of a witness. During the charging conference, in response to the court's decision to submit the second information to the jury, the following colloquy took place:

"[Defense Counsel]: And then arguing, if you were to dismiss that count, then I think there would not be a charge of consciousness of guilt if that charge was not submitted, am I correct?

"The Court: Not necessarily.

"[Defense Counsel]: Perhaps, Judge, we can discuss that in the charging conference.

"The Court: We certainly may."

The next day, the court reviewed with both attorneys on the record that "each counsel was handed the jury charge that the court intended to give . . . ." Among the many instructions the court enumerated on the record that were to be included in the charge was one on consciousness of guilt. After reading a summary of the jury charge, the court stated: "I think the record is replete with sufficient evidence that we have spent an enormous amount of time talking about this time, and that counsel at this point in time is satisfied it has been given every opportunity to suggest to the court to any changes that should be made." Both attorneys agreed.

The defendant did not object to the court's jury charge on consciousness of guilt and does not now seek review under *State* v. *Golding,* supra, 213 Conn. 239–40. See *State* v. *Gibson,* 56 Conn. App. 154, 160, 742 A.2d 397 (1999) ("[i]t has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the [*Golding*] standard" [internal quotation marks omitted]). The defendant therefore seeks review under the plain error doctrine, as codified in Practice Book § 60-5.[12]

"The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith,* 275 Conn. 205, 240, 881 A.2d 160 (2005). On the basis of our thorough review of the record and briefs, we conclude that the defendant has not shown

---

[12] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . ."

that the court's jury instruction on consciousness of guilt impugned the fairness or integrity of or public confidence in the judicial proceedings or that the failure to grant relief will result in manifest injustice. We therefore will not review the defendant's claim under the plain error doctrine.

## IV

The defendant's final claim is that the court improperly admitted evidence of his possession of marijuana. Specifically, he claims that the evidence was uncharged misconduct that was both irrelevant and highly prejudicial, thus depriving him of a fair trial.

The defendant claims that because the state's case was a weak one and that the decision depended on the credibility of the witnesses, the admission of evidence regarding his possession of marijuana was both irrelevant to the charges and highly prejudicial for its propensity to cast him in an unfavorable light. He acknowledges that he did not object at trial to the admission of the evidence and now seeks review of his unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40. A claim is reviewable under *Golding* if the record is adequate to review the claim and the claim is of constitutional magnitude alleging the violation of a fundamental right. Id., 239.

The defendant's claim that the admission of the evidence was of constitutional magnitude relies solely on his argument that he was denied his constitutional right to a fair trial. "The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right." *State* v. *Stepney*, 94 Conn. App. 72, 79, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006). "[O]nce identified,

unpreserved evidentiary claims masquerading as consti-
tutional claims will be summarily dismissed." *State* v.
*Golding*, supra, 213 Conn. 241.[13] The defendant's unpre-
served evidentiary claim fails under the second prong
of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The defendant cites generally to *State* v. *DeJesus*, 270 Conn. 826, 856
A.2d 345 (2004), for the proposition that this court's repeated holdings in
unpreserved error cases that evidentiary rulings do not rise to the level of
a constitutional violation cannot be reconciled with rulings on *preserved*
claims of evidentiary error. He concludes his reply brief with the broad
statement that "[i]f a criminal defendant has a fundamental constitutional
right to a fair trial, it should not make any difference whatsoever if an
evidentiary error that deprived someone of a fair trial was preserved at trial
or not." We do not accept the inherent invitation to review his claim on
policy grounds.